White, J.,
prepared the following opinion :
After stating the Case, and the questions arising from the verdict, he says, Before I go into the merits of the Case propounded by the jury, I would observe, 1st, (and that not for the sake of this Case, but to prevent any misunderstanding with respect to Cases which may hereafter arise,) that, without supposing the Common Law to be in force in Pennsylvania, of which, perhaps, it may be said, the Court in this Case have no Judicial knowledge, it appears by the Marriage Act of that State, as found by the jury, that marriages may in certain cases take place there lawfully, without the presence of a Justice of the Peace, (a) And, therefore, it cannot be admitted as a general principle, that in a prosecution of this kind, founded on a first marriage charged to have been made in Pennsylvania, it is always necessary to prove that a Justice of the Peace -was present. It is readily admitted, that in this Case, the marriage attempted to be proved, was solemnized under the general *provision of the Act found by the jury, requiring marriages to be solemnized'by the parties taking each other tobe husband and wife, in the presence of twelve witnesses, one of whom, it appears by a subsequent part of the same Act, ought to be a “ Justice of the Peace and that the jury intended, that this question should and ought to be decided under a due construction of that provision. The observation is made merely to confine the decision in this case to that part of the said Act, to which it properly belongs. 2. This supposed marriage is alleged to be without the State of Virginia, and within the State of Pennsylvania ; the Laws of which latter State, are foreign to our Courts, and are as far from being judicially known to them, until properly proved, as the Laws of Prance or Spain. It is true, the Constitution of the United States has provided a mode of proving those Laws to our Courts different from that in which other foreign Laws are proved. Yet until they are so proved, they are equally unknown to them in their judicial.capacity, and our Courts are equally incapable of taking notice of them. If it is not so, why have the Counsel for the accused called for a due authentication of the Statute of that State ? and why have they objected to it, because it is not, as they say, duly proved ? 3. The first and second objections to the evidence are bottomed on the principle of Law, which requires that every person offering testimony shall produce the best evidence the nature of the thing will admit of ; that is, as explained by the authorities, that no evidence shall be brought, which from the nature of the thing supposes a still greater evidence behind, and in the party’s possession or power. (Buller’s N. P. 293.) *153 But if it does not appear from the nature of the thing-, or otherwise judicially to the Court, that there is better evidence in the possession, or power of the party, then is the evidence, if otherwise unexceptionable, admissible. 4. That in all Criminal Prosecutions, as well as Civil Actions, the confessions of the party, his admissions and acts amounting to confession or admission, are not only admissible, but often the strongest evidences against him, and not unfrequently supply the place of evidence of a high character which would otherwise be called for: and that this is equally true in a prosecution for Bigamy, as in every other case. Why should it not ? Is there any thing in that crime, or its punishment, which ought to give to it a distinct Code of the Law of Evidence, or to give to those ^accused of it, privileges not extended to those accused of murder or treason ? Surely there is not. I know a different opinion has prevailed, and was pressed with great earnestness upon the Superior Court. But whence did that opinion arise ? From some expressions of Lord Mansfield, in the Case of Morris v. Miller, (b) uttered with a very different view, and which when properly understood, have nothing to do with this Case. What was that Case ? The Plaintiff brought an action against the Defendant for crim. con. and not being able to prove the fact of his marriage, he attempted to prove it by presumptions growing out of the cohabitation of him and her, the reputation growing out of that cohabitation, and other acts of them, and the acknowledgment of the Defendant that she was Morris’s wife, and that he had committed adultery with her. The Defendant’s Counsel insisted, that the action being in the nature of a Criminal Prosecution, the fact of the marriage should, as in a prosecution for Bigamy, be proved: that it could not, as in other Civil Cases, be inferred from reputation and cohabitation, and as to the Defendant’s confession, they did not pretend that if he had acknowledged that he was present, and saw the marriage, that would not have been evidence of a marriage in fact. But they said that he knew nothing of the marriage in fact, and that the confession could not extend beyond its being a marriage by reputation. And upon this principle it was, that the Court decided the question, as clearly appears by Lord Mansfield’s own words. “There must be evidence of a marriage in fact. Acknowledgment, (that is, acknowledgment of the wife by the husband,) cohabitation, and reputation, are not sufficient in this action.” And why shall they be sufficient? Hear his reason. “It shall not depend on the mere reputation of a marriage which arises from the conduct or declarations of the Plaintiff himself.” And again, “ No inconvenience can possibly arise from this determination. But inconvenience might arise from a contrary decision, which might render persons liable to actions founded on evidence made by the persons themselves who should bring the actions.” And twelve years afterwards, in the Case of Birt and Barlow, he assigns the same reason for that decision. What then is the whole amount of this decision, so much relied on, and so little understood? *Why, that a man’s own declaration, his own acts, and the reputation growing thereout, shall not be evidence for him in his own suit, brought by himself, to put money into his own pocket. Or, in other words, that he shall not be a witness for himself; a matter clear enough. But does that reasoning apply in the slightest manner to this Case? Most certainly it does not. Did the Court say in that Case, that a man’s own acts and acknowledgments could not be given in evidence, or where they were complete and full to the point, were not sufficient evidence against him in a prosecution for Bigamy, as well as for any other crime? It said no such thing. It is true, Lord Mansfield said, “ in a prosecution for Bigamy, a marriage in fact must be proved,” (a matter also clear enough,) but he also says, “ we do not at present define what may, or may not, be evidence of a marriage in fact.” The whole amount of their decision in that Case was, as has before been observed, that a man should not directly, or indirectly, be an evidence for himself in his own suit. Nor has such decision ever been given in any other Case, as far as my remarks have been able to extend. So far from it, that only two years before, the Case of Morris v. Miller, Lord Mansfield, Lord C. J. Parker, Justices Smythe, Bathurst and Perrot determined unanimously, in Mary Norwood’s Case, (c) reserved for the opinion of all the Judges, and being a Case of petty treason, for murdering her husband, (a crime whose punishment is much more severe than in this Case,) that seven years cohabitation, with several acknowledgments of the accused, that he was her husband, by calling him by that appellation, was good and sufficient evidence to prove a marriage in fact, and supported her conviction, although it was urged that either a copy of the Register, or some person present at the marriage, must be produced.
And in Truman’s Case, (d) Easter Term, 1795, all the Judges of England, except two, who were absent, adjudged that his conviction of Bigamy obtained upon his confession, made in a prosecution for a misdeméanor in a Scottish Court, and therefore amounting to no more than, and used only, as a parol confession, was proper: although in that confession he declared he could not tell the name of the person who married him. I take it then to be clear Law, *that the acts, acknowledgments, and confession of a person accused of Bigamy are as good evidence, and available, and sufficient for his conviction as they would be in any other case, and that where sufficiently clear, and strong, they will, as in other Cases, and particularly as in Mary Norwood’s Case, dispense with the production of other testimony which might otherwise be necessary ; and I think *154 before I dispose of the first point, I shall produce another authority or two', which bear directly upon it. 5. It is admitted, that the first marriagre must be duly established, according- to the rites and .customs of the country in which it was celebrated. 1 East’s Crown Law, 468-9, 470.
These matters being- disposed of, I proceed to inquire, whether, in this Case, “ parol evidence be, or be not proper,' sufficient and competent evidence, to establish the fact, that one of the persons present at the said mar.riage, was a Justice of the Peace.” This question, as I believe, puts the subject on broader ground, and ground more dangerous to the petitioner, than was intended by the jury. The Cases of Norwood and Truman, put it beyond doubt that in a Criminal Case where a marriage in fact is to be proved, the confession of distinct admission of the accused, that he or she was married, (if uncon-tradicted, or explained by other evidence,) is proper and sufficient to establish the marriage in fact, without producing a person present at the marriage, the Register of the marriage, or even proving who performed the ceremony, and why ? Because the admission of the marriage is ex vi termini, a prima facie admission that it was duly performed in all its parts. If it was not so performed, the party accused being party and privy to the transaction, ought to shew, and most probably would be the only person capable of shewing, in what it was not so.
If thus, an admission that the accused had been actually married, is an admission that the person who celebrated the marriage was duly qualified, the admission of the fact of qualification itself would certainly be as good, if not better evidence. This renders it proper that I should state explicitly, so far as my memory will enable me, what was the evidence on that point. ■ It was this: a witness who resided in Pennsylvania, in the neigh-bourhood where the marriage is said to have taken place, - was introduced, who said he knew the said Alice Woodward, (the supposed first wife.) and the petitioner, before and after the said marriage *was solemnized ; that some time before this event, the petitioner told the witness that he was about to be married to the said Alice, and requested him to be his groomsman, to which he assented; that accordingly, on the day appointed, he did wait upon him in that character, at the house of the said Alice’s father, when and where the said marriage was solemnized between him and the said Alice, by taking each other for husband and wife, before twelve witnesses, one of whom was a Justice of Peace in the county in which the said marriage took place ; the name of the Justice, and most, if not all, of the other eleven witnesses were mentioned by him, but are not now remembered ; that after the marriage,' but whether that evening, or the next morning is not recollected, a certificate of this marriage was made out and signed by the parties, the said Justice of the Peace, and eléven others, of whom he the witness was one : but whether the said certificate was taken to the Register of the county, or what became of it he did not know, but he knew that the parties lived together as man and wife for several years afterwards: the number of years is not recollected. Being asked how he knew the person he said was a Justice of the Peace was really one, he answered that he knew the said person well; that to his knowledge he was generally considered in the county to be a Justice of the Peace, and had acted as such many years before and after the said marriage ; was considered at the wedding to be one, and signed the said certificate as such : and that he never heard it doubted but that he was a Justice of the Peace. To this it was objected, that no written evidence was produced that he was a Justice of the Peace, and therefore, that the best evidence the nature of the case would admit of, was not offered. But, how does it appear to the Court that there was any written or better testimony of this fact, or that such testimony, if it existed, was in the power of the prosecutor ? Does the witness say so ? No. Does it necessarily result as a matter of Law from what the witness did say ? I apprehend not. Where is the Law which directs that the Commissions of Pennsylvania Justices shall be recorded, and that certified copies shall be evidences of them ? In what places are they to be recorded ? By whom are authentic copies to be certified so as to make them evidence ? Is there any Law of Pennsylvania upon this subject, of which the Court can take notice ? None. The Justices of Pennsylvania are Officers of a separate *and distinct Government, and every thing respecting them and their Commissions, must be regulated by the Laws of that Government: Which Laws, as we have seen, cannot be judicially known to this Court until they are proved according to the provisions of the Laws of the U. States. No Law upon this subject was produced to the Superior Court, or to this Court, nor was- it known to that Court, or this Court judicially, and I may add to its members individually, unless by guess, that any such exists. How then can this Court say that there was other, and better written evidence behind, in the power of the prosecutor ? • It cannot say so, unless it acts upon mere surmise and conjecture. Even if it should appear reasonable to suppose that some memorial of the appointment of Pennsylvania Justices is preserved, still it would remain to be proved what such memorial was, and whether the evidence thereof was or was not in the power of the prosecutor, so as to be produced at the trial. This is an important point. Let us therefore pause, and see what would be the consequence of a different decision.
There is little reason to doubt, but that in all civilized States, some written monument is preserved of all their important Officers', whether Judicial, Executive, or Ecclesiastical. But that the case'is-so, cannot be Judicially known to a Eoreign Court without proof. Much less can it be known, or assumed, that these monuments are open to, or that authenticated copies thereof can be had by, a stranger, (which in some States it is highly probable is not the case,) or how, or *155 in what manner such copies ought to be authenticated so as to make them evidence. Now, if this testimony is, without producing any Law of Pennsylvania on the subject, necessary, when the prosecution is founded on the first marriage had in that State, it is equally necessary when such prosecution is founded on a first marriage had in any other country, the Paws of which are foreign to our Courts. Suppose, then, the first marriage is said to have been solemnized in png-land, or Ireland, by a Roman Catholic Priest, (and such marriage would there be good) and suppose witnesses produced in Court, who were present at the marriage, who knew the Priest well, who were to swear that they knew the said Priest had for many years before and after the marriage, officiated publicly as a Roman Catholic Priest; that they saw him in that Church celebrate the rites of matrimony between the parties according *to the Ritual of the Church of England: Would it be competent for the accused to say, that is all true, but produce me, some written evidence of his canonical ordination ? And yet there is no more reason to doubt, but that some written evidence of such canonical ordination is preserved, than there is to doubt the same thing about the Commissions of the Pennsylvania Justices. But what is it ? Where is it; In England, Ireland, at St. Omers, or in Italy ? How can authentic proof be got ? Without proof of these facts first had, could any Court in such a case say, that there was better and written proof behind, in the power of the prosecutor ? But besides Great Britain, and Ireland, we have great and extensive mercantile transactions, in the Levant, the Adriatic, Italy, Portugal, Spain, Erance, and up the Baltic, where the difficulty of procuring the testimony called for, would be increased beyond calculation, and yet there may be no doubt but that cases may arise on marriages solemnized in those countries, requiring the animadversions of this Law. And here let me observe, that it is a mistaken idea, that a prosecution of this kind is either frivolous, or cruel. It is the only effectual, and where the marriage has taken place in a remote country, perhaps the only possible way in which the person imposed upon, can protect him or herself from a prosecution of Bigamy, in case he or she (as the Law permits) should marry again.
It does therefore seem to me, upon the reason and necessity of the case alone, if there were no authorities upon the subject, that where the first marriage was established out of the State, by a person, who, from all the circumstances of the case, must reasonably be presumed to have filled a character authorizing him to do so, and who was recognized as the proper Officer by the person accused, himself, and the company present at the time, and further proof, that after the ceremony, the parties lived publicly together as man and wife, it is as good evidence as in such a case a prosecutor can reasonably be expected to produce, and if not impugned by other testimony, is proper, competent and sufficient evidence, so far as such fact goes to convict the accused.
I have gone thus fully into what appeared to me to be the reason and policy of the Law, because this is a question of great magnitude, and of the first impression in Virginia. But, so far as it relates to foreign marriages at least, it does *not rest on reason and policy alone. The Case of The King v. The Inhabitants of Bramton, (e) has, in my estimation, put this question to rest. And although that was a Civil action, yet is the decision there conclusive here, as will be seen by the Case itself. There was in that Case no attempt to prove a marriage by reputation. The attempt was to prove a marriage in fact, and the dispute between the parties was, whether the evidence did or did not prove a marriage in fact. It cannot be contended, that when the same fact comes in dispute in a Civil and Criminal Case, the Law requires other and different evidence to establish such fact in one case, from what it requires to establish the fact in the other. The Law is not, and ought not to be so: nor has the much mistaken Case of Morris and Miller, as we have seen, countenanced such a doctrine. The Case, from East, was this: A British soldier in St. Domingo, wishing to marry the widow of one of his comrades, and she consenting thereto, they went into a Chapel, in the town of for that purpose, and there a service was read in the French language, by a person dressed like a Priest, and interpreted into English, by a person officiating as a Clerk ; by which interpretation it was understood to be the marriage service of the Church of England. The woman did not know certainly that he was a Priest. No evidence was given with respect to the marriage ritual used in the island. It was in this Case insisted', that no marriage in fact was proved, because there was no proof that the person officiating was a Priest, but only that he was habited like one, and because the customary ritual of the island was not proved; but the Court determined unanimously, tha{ it was a good marriage, whether as a marriage made under the Laws of the place, or under the Laws carried with them by the British troops. Upon the first of these points, Lord Ellenboroughsays, “Let us consider whether the facts stated would not be evidence of a good marriage, according to the Law of that country, whatever it might be. And, indeed, after the ceremony of marriage, as it was understood, and intended by the parties to be at the time, performed openly in a Chapel, by a person appearing there as a Priest, authorised to perform the ceremony of marriage, and this followed by a cohabitation of the parties for eleven *years afterwards, every presumption is to be made in favor of its validity. I would have considered myself safe in resting my opinion, in favor of this marriage, upon the Law of England as it exists, independent of the marriage Act. But, independent of that, I think every presumption must be made in favor of its valid *156 ity, according' to the Law of the country where it was celebrated, having been performed there in a proper place by a person officiating as one competent to perform that function.” Groos, LeBlanc, andBailey, Justices, expressed themselves in similar terms. (See their opinions.) Here then, is conclusive authority, that when a marriage in fact is supposed to have been celebrated abroad, and out of the State, not only that parol evidence, but parol evidence far inferior to that offered in this Case, is, (in the absence of contradictory evidence,) proper, complete and sufficient to prove, that the person officiating on such occasion, did fill the office which the rules aud customs of the country required one to fill who should perform such functions. But the Court did not stop here : they did expressly decide, that the evidence produced in that Case was sufficient, (even if the marriage, in fact, were alleged to be made under the Law of England,) to prove, that the person officiating was a Priest. Lord Ellenbor-ough says, “And this appears to have been per verba de presenti, and to have been celebrated by a Priest, that is, by one who publicly assumed the office of a Priest, and appeared habited as such.” To this Grose, J., gave his assent. Le Blanc says, “It is no objection to it, for the woman to say that she did not know the person officiating to be a Priest, for the same answer would probably be given by most persons who are married here. They must for the most part say, that they did not know that the person who officiated was a Priest, but it would be sufficient evidence of the marriage, that the ceremony was performed by a person officiating as a Priest in a regular place of marriage.” (The Law of Pennsylvania does not require that marriages should be celebrated at any particular place.) In support of this opinion, the Court rests itself upon the Case of The King v. Fielding, (f) So far as respects this point, the proof in Fielding’s Case amounted to this : The woman said to be his first wife, came one evening, by appointment, *to his private lodgings, in the city of London. ' Fielding insisted upon their being immediately married, and said he would fetch a Priest. He went out and in a short time returned with a man in a long gown, with a furred cap and a long beard, who he said was the Holy Father who was to make them one. On the woman’s expressing her fears that he might not be a Priest, he the Priest shewed her sundry insignia of his order, and having thereby quieted her fears, they were married by him, and the marriage was consummated. It may also be collected by the testimony of two of the domestics of the Russian Ambassador, that this Father in red was entertained in the Ambassador’s family as a Chaplin ; but there was no evidence, written or unwritten, of his having been regularly ordained, or of his being in Holy Orders at all, except what might be inferred from the above circumstances. And yet, this evidence was deemed sufficient to convict him of this same crime of Bigamy, and he was convicted accordingly. The authority of that Case has never since been questioned; so far from it, was quoted and relied upon as good authority by the Court, in the Case aforesaid. And let me ask, was not the decision perfectly right, and consistent with the justice, reason and Law of the Case ? Is not the Law well settled, that the acts, admissions, acknowledgments and confessions of the party, fairly obtained, are always evidence against him, and shall operate according to their nature, strength, and weight? Is it not notorious that the acts of a man may in certain cases, as in this, amount as clearly to the admission or assertion, as any words whatever ? When Fielding told the woman to whom he was first married, that he would go and bring a Priest; when he returned with a man hab-ited like a Priest, and said he was the Holy Father who was to make them one; when that man, being questioned by the woman in Fielding’s presence, averred that he was a real Priest, and being again questioned, shewed sundry insignia of his order, and when the woman being thereby satisfied, he was immediately married to her, and the marriage consummated ; could any words in any language amount to a more clear and distinct averment on the part of Fielding, that the person officiating was a Priest ? Was not the evidence as strong against him, and as well calculated to carry conviction to the human mind, as any confession in words could be? Well, when he abandoned this woman and married another perfectly ^ignorant of all those transactions, and had thereby reduced this second wife to the necessity of either living with him in adultery, of separating from him and forever renouncing the solace and comfort of a married state, or if she married again, of running the risk of the pains and penalties of that crime, if upon a prosecution for Bigamy against her at a future day she should fail to establish such first marriage : and when to escape the toils he had thrown around her, she had established a prosecution against him, and exibited the proof above stated, was it, ought it to have been- competent for him to say, All this is true ; I did produce this man at this first marriage as a Priest; he had the dress and insignia of one ; he passed at the marriage as one; he lived in the Russian Ambassador’s family as one ; and l was then married by him as one, and most probably he was one. But do you, who were perfectly ignorant of this whole transaction; do you prove positively that he was one ; do you produce some written evidence that he was canonically ordained ? Would this be right ? Ought it to be tolerated ? If he had played some trick, or put some fraud upon this first woman, in all reason ought not he who was privy and party thereto, be put to prove it ? Fielding’s Case was surely a stronger Case than Mary Norwood’s Case, or Trueman’s, and surely this is a stronger Case than his. Here the Justice was known to the witness to have acted publicly for a long time, before and after this marriage, as a Justice of the Peace, *157 to have attended the wedding in that character, and to have been universally considered in the county to be one. The marriage was public, in the presence of twelve witnesses at the least, and when the certificate of marriage was made out, and signed by the Justice, the petitioner subscribed his name to that same instrument, together with the Justice’s name. Tor these reasons, this first objection to the testimony does not appear to be well founded, and cannot prevail.
2. The second point submitted by the jury to the Court, rests upon the same legal principle with the first, to wit: that the best evidence the nature of the case will admit of, shall be produced. The Law of Pennsylvania, as it respects this matter, declares that marriages shall be celebrated by the parties declaring before twelve witnesses that they take each other for husband and wife. And that a certificate of such marriage shall be made out and signed by the parties and witnesses, twelve at least, one of whom shall *be a Justice of the Peace, and sent to the Register of the county, to be by him registered. And it is insisted, that a copy of this register, as the best evidence, ought to be produced, or its absence accounted for. But here the question arises, which is the best evidence the nature of the case admits of, a copy of such a register, or the testimony of the witnesses themselves (or one of them,) who were present at the marriage, given in open Court, on oath, and in the presence of the parties ? What is this certificate,- and how and when is it to be made and sent to the Register to be registered ? Is there any time in which it is to be made out and sent to the Register ? No. Is it made the duty of any particular person to take it to him ? No. Are the witnesses, or any one of them, required to go to the Register’s office, and make oath there, or any where else, to its verity ? No. What then is it ? A mere certificate under the hands of the witnesses present, unsupported by the oath of any person, to b.e sent to the Register’s office by any one who may chance to be going there, to be by him recorded as a kind of memorial of the transaction, and the witnesses present at it. And is this to be put in competition with the oath of a witness who was present, who saw the parties married, and heard the marriage contract, given in open Court, in the presence of all parties concerned ? Surely it is not.
In England, the Marriage Act has provisions to the same effect, but more particular, and much better guarded. The 14th section of that Act, directs the Wardens of every Parish to provide proper books for the purpose of registering marriages. Every page Of which is to be properly numbered, lined, &c. ; and the more effectually to identify them, they are to be signed by the parson, vicar, minister or curate, or by some other person in his presence, or by his direction. The 15th section directs, that all marriages shall be solemnized in the presence of two or more witnesses, besides the minister, and immediately after such celebration, an entry thereof shall be made in such register, in which it shall be. expressed that such marriage was made by banns, license, &c. and shall be signed by the minister, with his proper addition, and also by the parties married, and by such two witnesses. Yet it does not appear that the register, or a copy of it, was ever required, or deemed necessary to be produced on a trial for crim. con. or Bigamy in that country where a witness actually present at the marriage, *was produced. In the Case of Birt v. Barlow, (g) Judge Blackstone, in his report to the Court of King’s Bench, states his opinion to be, that the best evidence that could be given of an actual marriage, was “by some person personally present at the solemnity, which in his small experience had always been produced.” And although his opinion in that Case was set aside because the Court of King’s Bench thought that the identity of the parties might be proved by other, and inferior testimony, yet the general principle laid down by him, was not at all questioned. It would therefore seem, upon the whole, that this objection cannot be sustained.
3. As to the third point. The certificate of the Secretary of Pennsylvania shews, that the original Law was filed in his office, and states, that the writing annexed to that certificate is a true copy thereof ; and the Governor certifies, that the person who gave the aforesaid certificate, was, and is, Secretary for, and in the State of Pennsylvania, and that full faith and credit ought to be given to his official acts accordingly. Now, what more did the Court and jury want, to know or possess a right to demand ? Nothing that I can perceive. Nor do I discern any thing in the objection.
Upon the whole matter, the Court unanimously decide, that there is no error in the judgment, and therefore refuse the Writ asked for.

 This refers to the second section of the Act, by which it is provided, “ that this Law shall not extend to any who.shall marry, or be married, in the religious society to which they belong,” &c.

 4 Burrow, 2057.

 1 East’s Or. Law, 337.

 1 East’s Cr. Law, 470.

 10 Bast’s R. 282.

 5 State Trials, 610.

 Douglass, 172.